**Dated: September 14, 2020**

**The following is ORDERED:**



Janice D. Loyd
U.S. Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Billy Glen Murphy, and | ) | Case No. 20-10580-JDL |
| Joy Rose Murphy | ) | Chapter 13 |
| | ) | |
| Debtors. | ) | |
| | ) | |
| Billy Glen Murphy,   and | ) | |
| Joy Rose Murphy | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Adv. No. 20-1035-JDL |
| World Acceptance Corporation of | ) | |
| Oklahoma, and World Acceptance | ) | |
| Corporation | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING IN PART AND DENYING IN PART
## DEFENDANTS' MOTION TO DISMISS

### I. Introduction

This is an adversary proceeding brought by Debtors Billy Glenn and Joy Rose

Murphy objecting to the claim filed by Creditor World Acceptance Corporation d/b/a World

Finance Corporation [Claim 6][1] and seeking disgorgement of all payments made by them. As a basis for their objection to the Claim, Debtors assert that the loan from Defendants is void under Oklahoma law due to (1) the Defendants' failure to obtain an appropriate supervised lender's license from the Oklahoma Department of Consumer Credit and (2) the loan's annual percentage rate ("APR") exceeds that permitted under Oklahoma law.

Defendants have filed a Motion to Dismiss the Debtors' Complaint for failure to state a claim on the basis that Defendants are duly registered with and licensed by the State of Oklahoma Department of Consumer Credit, and that the finance charge in the loan is not violative of the maximum allowable annual percentage rate for such loans.  Before the Court for consideration are the Defendants' *Motion to Dismiss* (the "Motion") [Doc. 7], the *Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss* (the "Response") [Doc. 8] and *Defendants' Reply to Plaintiffs' Response to Defendants' Motion to Dismiss* (the "Reply") [Doc. 9].  The following constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Fed.R.Bankr.P. 7002 and 9014.[2]

## II. The Complaint/Facts

On July 12, 2019, Debtor Joy Murphy, as Borrower, executed a Loan Note and Security Agreement in favor of World Acceptance Corporation of Oklahoma, Inc., dba World Finance Corporation, as Lender.  The Loan Note and Security Agreement indicated

---

[1] The Proof of Claim is filed by one entity, "World Acceptance Corporation, also known as World Finance Corporation." The Debtors have named two entities as Defendants: World Acceptance Corporation, a South Carolina corporation, and World Acceptance Corporation of Oklahoma, a wholly owned subsidiary of World Acceptance Corporation (collectively "Defendants").

[2] All future references to "Rule" or "Rules" are to the Federal Rules of Bankruptcy Procedure or to the Federal Rules of Civil Procedure made applicable to bankruptcy proceedings, unless otherwise indicated.

the Creditor's address as 1200 S. Air Depot Blvd., Midwest City, OK 73110. The Loan Note provided for an amount financed of $1,294.09, a finance charge of $460.91, a total of payments of $1,755.00 and an annual percentage rate of 55.98%.

First, the Debtors' Complaint asserts that the loan was a consumer loan in which the rate of loan finance charge exceeds 10%. As such it was a "supervised loan" in which the "supervised lender" was required to have a supervised lender's license from the Oklahoma Department of Consumer Credit for each location at which loans were made. The Complaint alleges that while World Acceptance Corporation of Oklahoma has registered locations in Oklahoma in the cities of Guymon, Holdenville, Jay, Ponca City, Sapulpa and Stilwell, World Acceptance Corporation of Oklahoma "does not have a license in Midwest City Oklahoma" where the loan was executed. Debtors assert that the failure of the Defendants to have a proper license renders the loan void, absolving them of any liability thereon, denying the Defendants' Proof of Claim and entitling them to a refund of all payments made. Second, Debtors allege that the annual percentage rate on the loan of 55.98% is in excess of that permitted under Oklahoma law and entitles them to being released of any obligation to pay a charge in excess of that amount, a refund of amounts paid on the loan and attorneys fees.

### III. The Standards for a Motion to Dismiss

A motion to dismiss for "failure to state a claim upon which relief can be granted" is governed by Rule 12(b)(6) of the Fed.R.Civ.P., made applicable to adversary proceedings by Rule 7012. The purpose of a motion to dismiss under Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick,* 40 F.3d 337, 340 (10th Cir. 1994). In

3

considering a motion to dismiss, the Court must construe a complaint in the light most favorable to the plaintiff, taken as true all factual allegations and making all reasonable inferences in the plaintiff's favor that can be drawn from the pleadings. *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010); *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006). "That the Court accepts them as true, however, does not mean the allegations in a complaint are in fact true; a plaintiff is not required to prove his case at the pleading stage." *Higginbottom v. Mid-Del School District,* 2016 WL 951691 (W.D. Okla. 2016). The Court must not "weigh potential evidence that the parties might present at trial" in order to test the sufficiency of the complaint. *Sutton v. Utah State School For The Deaf And Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). It is well recognized that "granting a motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleadings but also to protect the interests of justice." *Dias v. City and County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, excepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In applying *Twombly's* "plausibility standard," the Tenth Circuit has held that the standard lies as a middle ground between "heightened fact pleading" and "formulaic recitation of the elements of a cause of action." *Robbins v. State of Oklahoma, ex rel., Department of Human Services*, 519 F.3d

1242, 1247 (10th Cir. 2008).  Although the complaint need not recite "detailed factual allegations ... the factual allegations must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co. LTD.,* 555 F.3d 1188, 1191 (10th Cir. 2009) (citation omitted); *In re Ward*, 589 B.R. 424, 427 (Bankr. W.D. Okla. 2018); *Ridge at Red Hawk, L.L.C.  v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (a complaint must give the court reason to believe the plaintiff has a reasonable likelihood of mustering factual support for the claims raised).

## IV. Discussion

### A. Debtors' Claim That Defendants Conducted Business Without a License From the Oklahoma Department of Consumer Credit.

The Oklahoma Consumer Credit Code, Title 14A O.S. § 1-101 et seq. (the "OCCC") defines a "supervised loan" as a "consumer loan in which the rate of the loan finance charge exceeds ten percent (10%) per year as determined according to the provisions on loan finance charge for consumer loans." 14A O.S. § 3-501(1).  In turn, a "supervised lender means a person authorized to make or take assignments of supervised loans." 14 A O.S. § 3-501(2).  Debtors allege, and Defendants do not deny, that World Acceptance Corporation is a supervised lender under Oklahoma law.  "Unless a person is a supervised financial organization or has first obtained a license from the Administrator authorizing the person to make supervised loans, a person shall not engage in the business of...(a) making supervised loans." 14A O.S. § 3-502(1)(a).  Furthermore, an application for license shall be under oath, and shall give the approximate location from which the business is to be conducted. 14 A O.S. § 3-503(1).  If a creditor has violated the provisions of the OCCC applying to authority to make supervised loans (§ 3-502), " the loan is void and the debtor

5

is not obligated to pay either the principal or loan finance charge... (and) if he has paid any part of the principal or of the loan finance charge, he has a right to recover the payment from the person violating this act...."14A O.S. § 5-202(2).

In their Complaint, Debtors claim that Defendants did not have a license from the Oklahoma Department of Consumer Credit for its Midwest City, Oklahoma branch office from which the loan originated.  To their Motion to Dismiss the Defendants have attached a License of Authority from the Office of the Administrator of Consumer Credit (License No. SL 007269), that authorizes it to conduct business as a supervisor lender in Midwest City, Oklahoma, from the office at 1200 S. Air Depot Blvd. [Doc. 7, Ex. B].  The Court also independently found that Defendant in its trade name was listed on the public website of the Oklahoma Department of Consumer Credit License Roster-Supervised Lenders as having a license issued on March 14, 2008, with an expiration date of December 31, 2020, to make supervised loans at its Midwest City location.[3]

The Court recognizes that the Supervised Lenders License as well as the Supervised Lenders Roster are matters outside the pleadings, and, as a general rule, are not properly considered on a motion to dismiss.  A court must convert a motion to dismiss into a motion for summary judgment if "matters outside the pleadings are presented to and not excluded by the court," and "all parties... are given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(d).  However, when considering a motion to dismiss, a "court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record." *Van Woudenberg*

---

[3] ok.gov/okdocc/documents/08-12-2020%/20SL-OK.pdf

*v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000) (abrogated on other grounds by *McGregor v.Gibson*, 248 F.3d 946, 955 (10th Cir. 2001); *Banco Santander de P.R. v. Lopez-Stubbe (In re Colonial Mortgage Bankers Corp.)* 324 F.3d 12, 19 (1st Cir. 2003) ("[M]atters of public record are fair game in adjudicating Rule 12(b)(6) motions, and a court's reference to such matters does not convert a motion to dismiss into a motion for summary judgment.").  A court may consider documents to which the complaint refers that are essential to the plaintiff's claim and the parties do not dispute the documents authenticity.  See *Jacobsen v. Deseret Book Company*, 287 F.3d 936, 941-42 (10th Cir. 2002).

If, however, a complaint "does not incorporate by reference or attach a document, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc*, 130 F.3d 1381, 1384 (10th Cir. 1997). See 5A Charles Allen Wright & Arthur Miller, *Federal Practice & Procedure § 1327* (4th ed.) ("[W]hen the plaintiff fails to introduce a pertinent document as part of her pleading, the defendant may be permitted to introduce the document as an exhibit to a motion attacking the sufficiency of the pleading....").

Debtors' Complaint asserts that the Defendants are not licensed by the Oklahoma Department of Consumer Credit to operate as a supervisor lender at its Midwest City office. The public records of the Department of Consumer Credit show otherwise.  This Court has the right to take judicial notice of those records considering this Motion to Dismiss.  Those records show the Defendants (actually the corporation and its trade name) are licensed by

the Oklahoma Department of Consumer Credit.  Accordingly, the Debtors' First Claim for Relief is dismissed.

### B. Debtors' Claim that "the Finance Charge Exceeds That Permitted by the Oklahoma Consumer Credit Code."[4]

Since the parties in the pleadings have not done so, Court deems it necessary to understand four key terms which the Federal Truth in Lending Act ("TILA") and the Uniform Consumer Credit Code[5] use in the hope of providing a more efficient way for consumers to compare the cost of credit: an "amount financed," a "finance charge," a "total of payments" and an "annual percentage rate."  The amount financed is roughly equivalent to the principal of the loan – "the amount of credit of which the consumer has actual use." 15 U.S.C. § 1638(a)(2)(A).  A "finance charge" includes all charges incident to the extension of credit expressed as a dollar amount. 14A O.S. § 3-109(1); 15 U.S.C. § 1605(a) and 12 C.F.R. § 226.4(a).  Roughly speaking, the finance charge is the *price* of the loan. 15 U.S.C. § 1605(a); 12 C.F.R. § 226.4(a).  Importantly, a finance charge includes not only interest paid on the loan, but also most fees and closing costs.14A O.S.§ 3-109(1)[6], 12 C.F.R. § 226.4(a)--(b) (stating the definition of which fees are included within

---

[4] *Complaint*, II, ¶ 13 [Doc. 1, pg. 4].

[5] The difference between the federal law and Oklahoma law is more apparent than real, because the substance of the law is embodied in interpretive Regulation Z in the Code of Federal Regulations (CFR), and Regulation Z has been adopted in Oklahoma as part of the regulations authorized to implement the OCCC. Thus, in effect, to discuss the OCCC and its applicable regulation is to discuss the federal law.  See Fred H. Miller, *Some Conundrums in an Enigma: Three Latent Consumer Credit Transactions Under the Oklahoma Version of the Uniform Consumer Credit Code*, 23 Oklahoma Law Review 241 (August 1970).

[6] Included within the "finance charge" are the interest, points, discount, service or carrying charges, loan fees, finder's fee or similar charge and fee for an investigation or credit report.  In the present case the finance charge of $460.91 consisted entirely of an "acquisition charge" of $129.41 and a "handling charge" of $331.50.  No interest, or at least no term indicating "interest," was disclosed as applying to the loan.

8

the finance charge disclosure).  The term "total of payments" refers to the total amount of money a borrower must repay under the loan contract.  Accordingly, in most loans the total payments is generally equivalent to the amount financed plus the finance charge.  Finally, the annual percentage rate, or "APR" as is commonly abbreviated, is an actuarially sound measure of the cost of credit expressed as a yearly rate that relates to the amount and timing of the value received by the consumer to the amount and timing of payments made. 15 U.S.C. § 1606(a) (defining annual percentage rate).

Defendants' Motion to Dismiss asserts that Debtors' Complaint fails to state a claim because the Debtors assert the Loan provided for an "annual percentage rate" in excess than that permitted under 14A O.S. § 3-508A.  That section, however, says the Defendants, does not make any restriction on the amount of the "annual percentage rate," only upon the "finance charge."  Section 3-508A provides as follows:

> (1) With respect to a supervised loan, including a loan pursuant to a revolving loan account, a supervised lender may contract for and receive a loan finance charge not exceeding that permitted by this section.
>
> (2) **The loan finance charge, calculated according to the actuarial method**, may not exceed the equivalent of the greater of either of the following:
>
> > (a) the total of:
> >
> > > (i)  twenty-seven (27%) per year on that part of the unpaid balances of the principal which is Two Thousand Nine Hundred Ten Dollars ($2,910.00) or less;
> > >
> > > (ii)  twenty-three (23%) per year on that part of the unpaid balances of the principal which is more than Two Thousand Nine Hundred Ten Dollars ($2,910.00) but does not exceed Six

9

Thousand Two Hundred Dollars ($6,200.00); and

(iii)  twenty percent (20%) per year on that part of the unpaid balances of the principal which is more than Six Thousand Two Hundred Dollars ($6,200.00); or

(b) twenty-five percent (25%) per year on the unpaid balances of the principal.

(Emphasis added).

As stated in the statute, the maximum allowable APR is a direct function of the finance charge.  Indeed, the allowable APR **is** the finance charge measured and stated on an actuarial basis.  Title 14A O.S. 3-304(1) states that "[I]f a lender is required to give to a debtor a statement of the rate of the loan finance charge, the lender shall state the rate in terms of an annual percentage rate...." § 3-304(1).  The Defendants assert that the 55.98% APR "is not a finance charge, it is an annual percentage rate," and that the Debtors' claims should be dismissed "because 14A O.S. § 3-508A pertains to loan finance charges."

The statute pertains to finance charges requiring disclosure of the same to be expressed as an APR.  *Enright v. Beneficial Finance Co. of New York, Inc.,* 527 F.Supp 1149, 1157 (N.D. N.Y. 1981) ("[T]he Annual Percentage Rate is not, under the TILA, a true interest rate, but rather reflects the annual percentage rate of the Finance Charge which includes items besides interest.").  The "finance charge" tells the consumer what the dollar cost is to obtain the loan.  As the Court understands it, the APR for purposes of § 3-508A is simply the finance charge expressed in an annual percentage rate so that the consumer can more readily compare the cost of obtaining the credit vis-à-vis other lenders.  At this

stage of the proceeding, the Court cannot say that the Debtors' claim that the APR was excessive is implausible.  It is apparent that evidence is going to be required for the Court to determine whether or not the APR or the finance charge exceeded the permissible limits.

Defendants  argue that because the loan is precomputed, § 3-508A(3)(a), "the loan finance charge may be calculated on the assumption that all scheduled payments will be made when due."  The Defendants say "based on this assumption, the loan finance charge is $460.91 and the unpaid balance of the loan is $1,755, (and) after a simple calculation, it is apparent that the finance charge is ....26.26%," and therefore it is not a violation of the 27% limit imposed by § 3-508A(2)(a)(i). [*Reply*, Doc. 9, pgs. 3-4].

Defendants and their counsel may regard the calculation of the APR as "simple", but the Court does not.  There is nothing in the record explaining how the 26.26% rate was determined.  The 26.26% APR is certainly not at this stage of the proceeding "apparent" to the Court.  Even if there were an affidavit or other evidence explaining its calculation, the same would clearly be beyond the four corners of the Complaint or the public records of which the Court could take judicial notice.  Thus,  the Defendants' allegations that the APR was permissible under Oklahoma law is a fact issue precluding ruling on the Debtors' claim by a Motion to Dismiss. "Calculation of the correct finance charge, and hence the APR, is a question of fact." *In re Williams*, 330 B.R. 534, 539 (Bankr. M.D. La. 2005); *Wepsic v. Josephson*, 231 B.R. 768 (Bankr. S.D. Cal. 1998) (determination of correct finance charge was issue of material fact precluding summary judgment).

Accepting as true the allegations of the Complaint, the Court cannot say at this pleading stage of the litigation that Debtors have failed to state a claim for the Defendants

charging an annual percentage rate in excess the maximum rates established in 14A O.S. § 3-508A.

## V. Conclusion

The Defendants' *Motion to Dismiss* [Doc. 7] is hereby **Granted** in part as to the Plaintiffs' First Claim for Relief, Part I, alleging that the loan with Defendant was void under Oklahoma law as a result of the Defendants' failure to obtain a Supervised Lenders License from the Oklahoma Department of Consumer Credit.

The Defendants' *Motion to Dismiss* [Doc. 7] is hereby **Denied** as to Plaintiffs' First Claim for Relief, Part II, alleging that the Defendant charged an annual percentage rate greater than that allowed under the Oklahoma Consumer Credit Code.

The Defendants are granted 14 days from the date of the entry of this Order in which to file its Answer to the Debtors' Complaint.

# # #